IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN SUE LAWSON, as the Personal Representative for the Estate of JOHN FITZGERALD PERRY, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 15-CV-300-FHS |
| OKMULGEE COUNTY CRIMINAL JUSTICE AUTHORITY, a public trust, NURSE T. WEST, LPN, JOHN F. MUMEY, M.D., NURSE FREEMAN, LPN, STATE OF OKLAHOMA ex. rel., OKLAHOMA DEPARTMENT OF CORRECTIONS, LINDSAY MUNICIPAL HOSPITAL, and ROSS LANE FISHER, M.D., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on the Defendant State of Oklahoma *ex. rel.* Oklahoma Department of Correction's ("ODOC") Motion to Dismiss (Dkt. # 24). Plaintiff filed her response on February 3, 2016 (Dkt. # 34) and Defendants filed a reply on February 10, 2016 (Dkt. # 39).

The Court notes that an Amended Complaint was filed herein on January 8, 2016 prior to Defendant filing its motion on January 20, 2016. Neither the docket sheet nor the amended complaint indicates that the amended complaint was ever served or delivered to the Defendant ODOC. Rule 15(a) of the Federal Rules of Civil Procedure allows a party

to amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading. Fed.R.Civ.P. 15(a). An amended complaint supersedes the original complaint and, is therefore, the only effective complaint in the case. *Franklin v. Kansas Dept. of Corrections*, 160 Fed.Appx. 730, *733-734, 2005 WL 3515716 at *1 (10th Cir. 2005)(citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Defendant's Motion to Dismiss refers, however, to allegations contained in the original complaint (Dkt. # 3) as opposed to the amended complaint (Dkt. # 19). A careful review of both complaints reveals that the main difference between the two complaints is the style or caption of the case and paragraph 6 which relates to another party in the case.[1] Since the substantive claims against Defendant ODOC have not changed, this Court will consider the arguments made within the motion to dismiss as they relate to the allegations contained within the amended complaint.

## STANDARD OF REVIEW

Defendant ODOC asks this Court to dismiss this action, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. In response, Plaintiff states she is not bringing a § 1983 claim against ODOC and she has not brought a "tort" claim against ODOC. Rather, Plaintiff indicates her sole claim against ODOC is for violation of Art. II, § 9 of the Oklahoma Constitution which prohibits the infliction of cruel and unusual punishment of convicted prisoners. In other words, Plaintiff indicates

---

[1] Also, based upon these changes, all references within the original complaint to the Okmulgee County Jail have been replaced with the Okmulgee County Criminal Justice Authority ("OCCJA").

her sole claim against ODOC is a claim pursuant to *Bosh v. Cherokee Building Authority*, 305 P.3d 994 (Okla. 2013).

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555. Nonetheless, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Ballilstreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## LEGAL ANALYSIS

Plaintiff alleges a "mug shot" taken on September 28, 2011, showed Mr. Perry had a "golf ball-sized lump or mass under on his neck under his right ear." Dkt. # 19, at ¶ 21. Plaintiff alleges "medical staff at LARC [Lexington Assessment and Reception Center], including Dr. Fisher, did nothing to determine whether the lump was malignant and provided wholly insufficient and inadequate medical care and treatment." *Id*., at ¶ 21. According to Plaintiff, Mr. Perry was a LARC for approximately four weeks, during which he was given a chest X-Ray and medical staff at LARC "determined that there was

a "spot" on [his] lungs." *Id.*, at ¶ 22. According to Plaintiff, nothing further was done "to provide proper pathology or diagnosis." In October of 2011, Mr. Perry was transferred from LARC to James Hamilton Correctional Facility ("Hamilton"). Plaintiff alleges Mr. Perry submitted medical sick call slips to the nurse and doctors but was "denied meaningful medical attention." *Id.*, at ¶ 23. Further, Plaintiff admits in June 2012, ODOC sent Mr. Perry to LMH [Lindsey Municipal Hospital] to have the lump removed from his neck and he was returned to his cell later that same day. Plaintiff continues by asserting medical staff did not "conduct proper follow-up, diagnostics and treatment" and were "negligent and deliberately indifferent to Mr. Perry's serious medical needs." *Id.*, at ¶ 25. Thereafter, in May or June of 2013, Mr. Perry was coughing up blood, had swelling in his face and was seen by a physician at Hamilton who had Mr. Perry taken to a hospital in Poteau, Oklahoma for an X-ray. Approximately two or three days later, the doctor at the prison referred Mr. Perry to OU Medical Center in Oklahoma City for another X-ray. *Id.*, at ¶ 26. Mr. Perry was also sent back by the prison to LMH in June of 2013 and the doctor at LMH referred Mr. Perry to OU Medical Center for treatment. Plaintiff claims it was around June of 2013 when Mr. Perry first learned he had been diagnosed with cancer, which turned out to be Stage 4 and terminal. Radition treatment was begun at OU Medical Center for approximately thirty (30) days during which time Mr. Perry remained at OU Medical Center. Following the radiation treatment, Mr. Perry was sent back to LARC. According to Plaintiff, Mr. Perry also received "chemo" therapy from OU Medical Center but he succumbed to his cancer on August 8, 2013. *Id.*, at ¶¶s 28-31. Plaintiff did not file this lawsuit until August 10, 2015.

These allegations, at best, assert a negligence claim against ODOC regarding Perry's medical treatment. There is no claim that ODOC denied Perry medical treatment. Rather, Plaintiff claims the medical treatment was inadequate and/or insufficient.[2] Thus, Defendant argues they are governed by the time limitations contained within the Oklahoma Governmental Tort Claims Act ("OGTCA").

The OGTCA has long been held to be the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. *Tuffy's, Inc. v. City of Okla. City,* 212 P.3d 1158, 1163 (Okla. 2009). The OGTCA waives governmental immunity for losses resulting from the torts of a governmental entity or its employees acting within the scope of their employment subject to specific limitations and/or exceptions. Okla.Stat.tit. 51, § 153(A). A state or political subdivision is not liable if the loss or claim results from the provision, equipping, operation or maintenance of a prison. *Id*., at § 155(25). Plaintiff argues this exemption from liability brings her claims within the purview of *Bosh v. Cherokee Building Authority*, 305 P.3d 994 (Okla. 2013), since "without bringing a claim under the Oklahoma Constitution, Plaintiff 'would have no avenue for recovery for [Mr. Perry's death] whatsoever.' *Perry v. City of Norman*, 2014 OK 119, ¶ 18, 341 P.3d 689, 693." Dkt. # 34, at p. 2.

In *Bosh*, the Oklahoma Supreme Court recognized a private cause of action under Okla. Const. art. 2, § 30 for claims of excessive force against a municipality making the entity liable for the actions of their employees where those employees are acting within

---

[2] While prisons are obligated to provide medical care to their inmates, *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106, 97 S.Ct., at 292.

5

the scope of their employment, notwithstanding the requirements and limitations of the OGTCA. *Bosh, supra* at 1002. Although the Oklahoma Court of Civil Appeals has interpreted *Bosh* as providing a cause of action in order to protect against violations of constitutional rights and guarantees in general rather than being limited to the specific constitutional right involved in *Bosh*, *see*, *GJA v. Oklahoma Dept. of Human Services*, 347 P.3d 310 (Okla. Civ. App. 2015), no court has specifically held *Bosh* is applicable to claims of deliberate indifference to serious medical needs.

Moreover, even if *Bosh* were so expanded, this Court finds Plaintiff's claims do not, for the reasons stated herein, state a claim for deliberate indifference to serious medical needs. Further, Plaintiff's claims are barred by Oklahoma's one year limitations period for claims against the state based on facts which occurred while a person was an inmate. *See*, Okla.Stat., tit. 12, § 95(A)(11). *See also*, *Fisher v. Glanz*, 2016 WL 141846, *8 (N.D. 2016)(holding Okla.Stat., tit. 12, § 95(A)(11) "trumps the more general § 95(A)(3) when a state constitutional claim is brought by an inmate or based upon facts that occurred while the person was an inmate in state custody"). Therefore, this Court hereby grants ODOC's motion to dismiss (Dkt. # 24) and dismisses this action with prejudice against State of Oklahoma *ex. rel.* Oklahoma Department of Corrections.

It is so ordered on this 13th day of May, 2016.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma